# LAW OFFICES OF MICHAEL G. SANTANGELO PLLC

ATTORNEY AND COUNSELOR AT LAW

75 SOUTH BROADWAY • SUITE 4-54195 • WHITE PLAINS, NEW YORK 10601
OFFICE: (914) 304-4242 • TELEPHONE (914) 391-1823 • FACSIMILE (914) 941-4513
EMAIL: mgsesq@msn.com

MICHAEL G. SANTANGELO

May 30, 2019

**Via ECF & PDF** (chambersnysdseibel@nysc.us.gov)
Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quorrapas Street
White Plains, NY 10601

Re:   **Joint Letter Motion Requesting Court Approval of Settlement Agreement**
***GARCIA v JFE INC. et al.*, 18-cv-11554 (CS)**

Dear Judge Seibel:

The Parties write to report that they have reached an agreement on settling this matter. We therefore seek the Court's approval of that agreement for the reasons set forth in this joint letter motion.

## I.   Background

Plaintiff was employed by Defendants JFE INC. and JFE of CONNECTICUT, INC., a demolition company operating out of New York and Connecticut (collectively, "Defendants"), since December 2002.

This lawsuit was filed on December 11, 2018, for alleged violations of the Fair Labor Standards Act and New York Labor Law. Plaintiff alleged that pursuant to the FLSA, he is entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime, (4) liquidated damages; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs. Plaintiff further alleged pursuant to New York Labor Law that he is entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime, (4) unpaid spread-of-hours; (5) liquidated damages equal to one hundred percent (100%) of the sum of unpaid wages, unpaid overtime, and unpaid spread-of-hours, (6) up to five thousand dollars ($5,000) for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (7) up to five thousand dollars ($5,000) for Defendants' failure to provide an accurate wage (8) nine percent (9%)

1

simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") NYCPLR § 5004, and (9) attorneys' fees and costs. Defendants deny all of Plaintiff's claims in their entirety.

## II.    The FLSA Settlement is Fair and Reasonable

Based on the estimated total damages, the amount of Ninety Thousand Dollars ($90,000.00) (inclusive of Plaintiff's legal fees) is fair and the proposed settlement agreement should be approved. This settlement was the result of a contested litigation, an extensive review of all records, and arm's-length bargaining between experienced counsels, with the guidance and recommendations made by the Court appointed mediator, Peter L. Altieri, Esq.

In this context, we note that the litigation risks faced by the parties are substantial. If this settlement agreement is not approved, then the parties would be required to go forward to a full trial on the merits. Afterward, the verdict or finding could be the subject of a further appeal.

The parties anticipate that further litigation would lead to increased litigation costs, use of judicial resources, and an extensive delay of any resolution. In light of these factors, including the serious risks posed by further litigation, this settlement agreement is a reasonable compromise over the contested issues and the Court's approval is appropriate. The parties believe for all of the reasons stated in this letter, the factors set forth by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199, 206 (2d Cir. 2015) have been satisfied.

The Settlement Agreement is attached hereto as Exhibit "1."

### A. Plaintiff's Assessment

Plaintiff's counsel initially evaluated Plaintiff's potential damages by discussing with Plaintiff in great detail the length of his employment, the nature of his work, the hours he worked, and the pay he received as compensation.

The initial calculations were made based on Plaintiff's assertions and the potential damages calculated for the Plaintiff were as follows:

Plaintiff Ponciano Garcia asserted that he worked approximately seventy-two (72) hours on average each week from December 11, 2012 to December 11, 2018 the date on which the complaint was filed). The Plaintiff claimed that he believed that he worked 8 hours three days a week and 16 hours the other 3 days a week, or a double shift. In all, Plaintiff alleged that he worked an average of nine days per week, or 4 days of overtime each week. Each 8-hour work shift was counted by the Defendants as a separate workday. As such, according to the Plaintiff, he worked approximately 1,152.00 days of overtime

2

from December 11, 2012 to December 11, 2018, the relevant time periods at issue. In 2013, Plaintiff was paid one hundred and twenty-five ($125.00) dollars a day, which continued through December 1, 2017. Thereafter, Plaintiff was paid $140.00 per day in 2018, through the filing of the complaint.

As indicated, the initial damage calculation was based upon the Plaintiff's belief that he worked 72 hours a week or 9 days a week each week since December 2012, resulting in a liquidated damage calculation of $183,147.60. (Plaintiff's original Damage Calculation is annexed hereto as Exhibit "2"). Following the preparation of these calculations, we were provided with daily work logs prepared by the Defendants which the Defendants had maintained since December 2012. Contained in those work logs were work sheets which delineated every day Plaintiff worked since December 11, 2012, including those on which he worked double-shifts. Defendants were not able to locate, and therefore could not provide, the work logs for 2015. Based upon those daily work logs, I added the amount of days actually worked during the relevant time period and arrived at 898.13 days of overtime worked, from December 11, 2012 through December 11, 2018, or 265.90 days less that upon which my initial calculation was based upon. Thus, I re-calculated the overtime worked based upon the Defendants' numbers as contained in their work logs and arrived at $119,623.50 as a reduced, revised damage calculation. This number assumes liquidated damages; without liquidated damages, the damage number would be $59,811.75.

Plaintiff PONCIANO GARCIA's minimum wage and overtime compensation shortfall with liquidated damages under the FLSA was One Hundred Nineteen Thousand Six Hundred Twenty Three Dollars And Fifty Cents ($119,623.50) and his minimum wage, overtime compensation and spread-of-hour shortfall under the NYLL was One Hundred Nineteen Thousand Six Hundred Twenty Three Dollars And Fifty Cents ($119,623.50). Additionally, Plaintiff claimed Five Thousand Dollars ($5,000.00) for NYLL paystub violations and Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations, and Ten Thousand Seven Hundred Six Dollars And Thirty Cents ($10,706.30) in New York pre-judgment interest. The sum of NYLL compensatory and liquidated damages, plus NYLL paystub and time-of-hire notice violation, with prejudgment interest, is One Hundred Forty Thousand Three Hundred Twenty Nine Dollars And Eighty Cents ($140,329.80). This number would include liquidated damages and, in all probability, would be less if the Defendants had been able to locate and provide the Plaintiff with the 2015 work logs.

After extensive negotiations and attendance at a Court ordered Mediation, given the inherent risks of litigation and the Defendants' ability or inability to pay any judgment, Plaintiff and Defendants agreed to settle for the proposed settlement amount of Ninety Thousand Dollars ($90,000.00), inclusive of attorneys' fees for the Plaintiff's counsel.

3

## B. Defendants' Assessment

Defendants disputed Plaintiff's allegations of hours worked and amount of compensation. Defendants contend that, at all times, Plaintiff was paid in excess of the minimum wage under both federal and state law. Thus, according to the Defendants, there is no liability owed for any alleged minimum wage violation.

With respect to the overtime claims, the work logs reflect that there were numerous weeks where Plaintiff worked less than 40 hours in a workweek and, thus, could not have been owed any overtime. Defendants also point out that Plaintiff would be required to deduct from any overtime calculations meal breaks and other rest breaks that were given to Plaintiff during the workday.

Furthermore, the Parties agree that Plaintiff was paid for each eight-hour overtime shift at the daily rate. The real dispute centers around the failure of the Defendants to pay Plaintiff one and one-half times for each hour worked overtime. Defendants claim that Plaintiff agreed to accept a shift rate for any overtime that he worked.

Defendants also claim that if an employee worked a second shift on any given day, they would be required to work only 4 or 5 hours and would still be paid as if they worked a full eight-hour day. At the mediation, the Plaintiff conceded that there were days where he worked only 7 hours on an overtime shift, thus raising an issue as to the exact amount of overtime he worked.

Regarding damages, the Defendants assert that Plaintiff is not entitled to recover compensatory damages under both the FSLA and the NYLL. As such, Defendants claim that Plaintiff's request for double calculation of compensatory damages under FSLA and NYLL is without merit. As for liquidated damages, courts in the Second Circuit have also held that Plaintiff is not entitled to both FSLA and NYLL damages because they serve the same practical purposes in compensating the Plaintiff and deterring wage violations.

In addition, the Court has the discretion to reduce or deny liquidated damages if the employer shows that its actions were in good faith and that it had reasonable grounds to believe that its acts or omissions were not a violation of FLSA or willful underpayment under NYLL. Defendants allege that their actions were in good faith and there was no willful underpayment.

## C. Collective Action

While this action was filed as a Collective action, we subsequently learned, following the filing of the complaint, that the remaining employees who worked with the Plaintiff, had each executed a document affirmatively stating that they had been paid in full

4

for all overtime hours worked and that no additional money was owed to them by the Defendants. As such, I determined that it would be extremely difficult to recover anything for these employees based upon these documents. Additionally, JFE INC. and JFE of CONNECTICUT, INC., earned only a combined amount of $192,039.00 in profits in 2017, raising the possibility that the Defendants would not be able to pay a large settlement.

### D. Terms of The Settlement Agreement

Defendants have agreed to pay a total sum on Ninety Thousand ($90,000.00) Dollars to be paid as follows:

Within five (5) business days following court approval of this Agreement, Defendants shall deliver to Plaintiff at the Law Offices of Michael G. Santangelo, PLLC at 75 South Broadway, Suite 4-54195, White Plains NY 10601 three checks drawn on good and sufficient funds, the first check in the gross amount of $6,670.00, the second check in the amount of $6,670.00 and the third check in the amount of $6,660.00.   The first check for $6,670.00, less applicable tax withholdings and deductions required by law, shall be payable to Ponciano Garcia representing payment for any and all unpaid minimum wages, overtime, spread of hours and any other wages under the FLSA and NYLL and its supporting regulations.   Plaintiff shall receive an IRS Form W-2 with respect to these payments. The second check for $6,670.00 shall be payable to Ponciano Garcia and represents payment for alleged liquidated damages and penalties under the FLSA and NYLL and its supporting regulations.  Plaintiff shall receive an IRS Form 1099-MISC with respect to this payment.

The third check for $6,660.00 shall be payable to The Law Office of Michael G. Santangelo representing payment of a portion of Plaintiff's attorneys' fees, costs and expenses incurred in this matter. Plaintiff and Michael G. Santangelo PLLC shall receive an IRS Form 1099-MISC with respect to this payment and all future payments of attorneys' fees and costs made under this Agreement. All payments made for fees and costs under this Agreement are inclusive of those incurred by Michael G. Santangelo PLLC, the Law Offices of Anthony J. Mamo, Jr., PC, and/or any other law firm or attorney.

Commencing on July 1, 2019 and for each of the next six consecutive months thereafter, Defendants shall deliver to Plaintiff at the Law Offices of Michael G. Santangelo, PLLC at 75 South Broadway, Suite 4-54195, White Plains NY 10601 three checks drawn on good and sufficient funds, the first check in the gross amount of $3,335.00, the second check in the amount of $3,335.00 and the third check in the amount of $3,330.00. The first check for $3,335.00, less applicable tax withholdings and deductions required by law, shall

be payable to Ponciano Garcia representing payment for any and all unpaid minimum wages, overtime, spread of hours and any other wages under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form W-2 with respect to these payments. The second check for $3,335.00 shall be payable to Ponciano Garcia representing payment for alleged liquidated damages and penalties under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form 1099-MISC with respect to these payments. The third check for $3,330.00 shall be payable to The Law Office of Michael G. Santangelo representing payment of a portion of Plaintiff's attorneys' fees, costs and expenses incurred in this matter.

Of the Net Settlement Amount, One Third (1/3), or Twenty Nine Thousand Nine Hundred Seventy Dollars ($29,970.00) is due to Plaintiffs attorneys, the Law Offices of Michael G. Santangelo, PLLC, in addition to out-of-pocket expenses of Six Hundred Seventy-Six Dollars ($676.00). The out-of-pocket expenses incurred by the Plaintiff's counsel is $400.00 for the filing of the Summons and Complaint and $276.00 for service of process on the various defendants. **Counsel for Plaintiff agrees to waive any request for reimbursement of these expenses.**

The net recovery to the Plaintiff is thus Sixty Thousand Thirty Dollars ($60,030.00).

a. **Terms, Timing and Breakdown of Settlement Amounts**: The breakdown of the Settlement Amount to Plaintiff and Plaintiff's Counsel shall be as follows:

Within five (5) business days following court approval of this Agreement, Defendants shall deliver to Plaintiff at the Law Offices of Michael G. Santangelo, PLLC at 75 South Broadway, Suite 4-54195, White Plains NY 10601 three checks drawn on good and sufficient funds, the first check in the gross amount of $6,670.00, the second check in the amount of $6,670.00 and the third check in the amount of $6,660.00. The first check for $6,670.00, less applicable tax withholdings and deductions required by law, shall be payable to Ponciano Garcia representing payment for any and all unpaid minimum wages, overtime, spread of hours and any other wages under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form W-2 with respect to these payments. The second check for $6,670.00 shall be payable to Ponciano Garcia and represents payment for alleged liquidated damages and penalties under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form 1099-MISC with respect to this payment.

The third check for $6,660.00 shall be payable to The Law Office of Michael G. Santangelo representing payment of a portion of Plaintiff's attorneys' fees, costs and expenses incurred in this matter. Plaintiff and Michael G. Santangelo PLLC

shall receive an IRS Form 1099-MISC with respect to this payment and all future payments of attorneys' fees and costs made under this Agreement. All payments made for fees and costs under this Agreement are inclusive of those incurred by Michael G. Santangelo PLLC, the Law Offices of Anthony J. Mamo, Jr., PC, and/or any other law firm or attorney.

Commencing on July 1, 2019 and for each of the next six consecutive months thereafter, Defendants shall deliver to Plaintiff at the Law Offices of Michael G. Santangelo, PLLC at 75 South Broadway, Suite 4-54195, White Plains NY 10601 three checks drawn on good and sufficient funds, the first check in the gross amount of $3,335.00, the second check in the amount of $3,335.00 and the third check in the amount of $3,330.00. The first check for $3,335.00, less applicable tax withholdings and deductions required by law, shall be payable to Ponciano Garcia representing payment for any and all unpaid minimum wages, overtime, spread of hours and any other wages under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form W-2 with respect to these payments. The second check for $3,335.00 shall be payable to Ponciano Garcia representing payment for alleged liquidated damages and penalties under the FLSA and NYLL and its supporting regulations. Plaintiff shall receive an IRS Form 1099-MISC with respect to these payments. The third check for $3,330.00 shall be payable to The Law Office of Michael G. Santangelo representing payment of a portion of Plaintiff's attorneys' fees, costs and expenses incurred in this matter.

2. Execution of separate Confessions of Judgments in the amount of $90,000.00 by both Jo Ann Fucci and Christopher Fucci to secure the payment of the settlement amount. Said Confessions of Judgment were agreed to be held in escrow by Counsel and released for filing only upon a breach of the payment schedule.

### C. The Attorney's Fees are Fair and Reasonable

As indicated, of the Net Settlement Amount, One Third (1/3), or Twenty Nine Thousand Nine Hundred Seventy Dollars ($29,970.00) is due to Plaintiff's attorneys, the Law Offices of Michael G. Santangelo, PLLC, in addition to out-of-pocket expenses of Six Hundred Seventy-Six Dollars ($676.00). The out-of-pocket expenses incurred by the Plaintiff's counsel is $400.00 for the filing of the Summons and Complaint and $276.00 for service of process on the various defendants. **Counsel for Plaintiff agrees to waive any request for reimbursement of these expenses.**

The net recovery to the Plaintiff is thus Sixty Thousand Thirty Dollars ($60,030.00).

The retainer agreements agreed to and signed by Plaintiff provided that Plaintiff's counsel would recover One Third (1/3) of net recovery of any settlement in addition to costs and expenses. Plaintiffs' Counsel seeks only One Third (1/3) of the net recovery of

7

any settlement and voluntarily waives any costs and expenses incurred. This fee should be approved, as "[a] n award on one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also*, *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013). ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement, plus costs). This proposed fee award should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted). Finally, the requested fee is particularly reasonable in light of Plaintiff's recovery *after fees* of a significant portion of its claimed compensatory damages, which are the subject of dispute as set forth above. *See Chapman-Green*, 2013 U.S. Dist. LEXIS 25671, at *7 (approving settlement where plaintiffs received "nearly 90 percent of the wages they claimed they were owed").

The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff and the risk that recovery after discovery, motion practice and trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate, substantive and documentary defenses which highlighted substantial risk to Plaintiff's claims. In the case at bar, Plaintiff will recover, *after fees*, in excess of 100 percent of the wages he claims that he was owed.

As set forth in the annexed Affirmation of Services of Michael G. Santangelo, Esq. (Exhibit 3), as of May 18, 2019, Plaintiff's counsel has spent 57 hours in investigating, prosecution and settling this matter. Plaintiff's counsel has been a practicing litigation attorney for thirty-seven (37) years and has prosecuted and defended numerous FLSA cases both in the Eastern and Southern Districts of New York. Plaintiff's counsel uses an hourly billing rate of $400.00 an hour, which is within the range paid to attorneys of similar experience in the Southern District of New York. *See Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016). Thus, Plaintiff's counsel has expended fifty-seven (57) hours and is entitled to the sum of $22,800.00, if paid on an hourly basis. Because Plaintiff only speaks Spanish, at each meeting in my office, I was required to arrange for an interpreter to be present. Plaintiff's counsel seeks the sum of $29,970.00, pursuant to his contingency agreement, which is $7,170.00 more than that of his hourly rate, or a 1.31% multiplier of the lodestar amount. An Affirmation of Services is annexed as Exhibit "3."

### E. The Parties Believe that the Settlement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." See *Cheeks, supra; Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in finding a settlement fair," as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, [c]ourts approve FLSA settlements when they are reached as a result of a contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan 14, 2014).

Nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. As indicated, the arm's length bargaining between the represented parties, along with the information shared prior to and during settlement negotiations and the court ordered mediation, weighs in favor of finding the settlement reasonable. Through discovery prior to mediation, the parties have gathered and exchanged information relevant to the claims and defenses in this matter and can therefore accurately assess the relative strengths and weaknesses of the asserted claims and their respective positions. See, e.g., *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'''); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013). (Courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted).

Although the FLSA places "strict limits on an employee's ability to waive claims… for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks omitted), "these concerns are not as relevant when the plaintiff no longer work for the defendants, as is the case here.") *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, at *3 (S.D.N.Y. Jan. 8, 2014). Moreover, the releases in the Settlement Agreement are not overly broad as they are specifically limited to releasing claims under the FLSA and the NYLL. *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088, at *8-9 (S.D.N.Y. Apr. 28, 2017).

For the reasons provided above, the parties respectfully seek this Court's approval of the settlement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel should you have any questions regarding this submission.

Respectfully Submitted,

**LAW OFFICE OF MICHAEL SANTANGELO PLLC**
*Attorney for Plaintiff*
75 South Broadway
White Plains, NY 10601
(914) 304-4242

By: _____

**LITTLER MENDELSON P.C.**
*Attorneys for Defendants*
900 Third Avenue
New York, New York 10022-3298
(212) 583-9600

By: Joseph E. Field
_____

10